**THOMAS et ux. v. CREAGER.**

No. 1673.

Court of Civil Appeals of Texas. Eastland.

June 4, 1937.

Rehearing Denied July 9, 1937.

Ritchie & Ritchie and J. R. Creighton, all of Mineral Wells, for appellants.

Bouldin & Bouldin, of Mineral Wells, for appellee.

FUNDERBURK, Justice.

R. B. Thomas, the head of a family, having a residence homestead in Strawn, Tex., was owner also of other detached lots in said town upon which was located a two-story building. In the lower story of said building he owned and operated, through employees, a garage and filling station. In the second story he had an office which he used in the conduct of several different kinds of business operations. His principal business was that of a cattleman, or the ranching business. He owned extensive ranches and herds in Palo Pinto and Culberson counties. With the facts existing as thus stated, he executed a mortgage (deed of trust lien) on the garage lot and building to secure a loan from L. H. Creager for $3,500, evidenced by notes. After foreclosure of the mortgage by exercise of the power of sale given in the deed of trust and the sale of the property to Creager, Thomas and wife brought this suit against Creager to cancel the deed of trust and trustee's deed and to remove same as a cloud from plaintiffs' title to said property. Plaintiffs asserted the invalidity of the mortgage and sale on the ground that the property was exempt as their business homestead.

The defendant, among other things, pleaded in defense that at the time of the execution of the deed of trust plaintiffs were not using the premises as a business homestead, or even in connection with the business in which they were then engaged, that Thomas's business at said time was the ranch business, and that he owned and operated ranches in several counties. Defendant further pleaded estoppel in that at the time of the execution of the deed of trust Thomas represented to defendant and defendant's attorney that the property was not his business homestead; that he did not claim any part of it as such; that his only business was that of a ranchman, etc., upon which representations defendant relied in making the loan secured by the deed of trust.

Upon a jury trial, after the court had overruled a motion of plaintiffs for an instructed verdict, the case was submitted upon special issues. The verdict rendered in response thereto found in substance that at the time the deed of trust was executed the property in question was not plaintiffs' business homestead; that Thomas at said time represented to defendant that it was not his business homestead; that at that

time Thomas's chief business was that of ranching; that he so represented to defendant; and that defendant relied upon said representations in making the loan.

From the judgment for defendant entered in accordance with said verdict the plaintiffs have appealed.

■ The principal and determinative question in this case, as we are led to conclude from a study of the record, is one involving the construction of a constitutional provision. What is the meaning of the word "business" as used in Constitution, art. 16, § 51, providing for the exemption of a lot or lots in a city, town, or village and not to exceed in value $5,000; "provided, that the same shall be used * * * as a place to exercise the calling or business of the head of a family"? The property in question, if subject to the homestead exemption, was so, we think, under the facts of this case, not because it was "a place to exercise the *calling*," but a place to exercise the *"business* of the head of a family." (Italics ours.) Shryock v. Latimer, 57 Tex. 674.

■ The suggestion that the above-stated question of construction is involved implies, of course, that the word "business" may properly have different meanings. That seems to be true. One definition given in Webster's International Dictionary is "That which busies or engages time, attention or labor *as a principal, serious concern or interest."* (Italics ours.) Corpus Juris, among many definitions, including the above, gives two others as follows: (a) "* * * That which * * * occupies the time, attention, or labor of one *as his principal concern,* whether for a longer or shorter time." (Italics ours.) (b) "* * * that which busies or occupies one's time, attention, and [or ?] labor *as his chief concern.* * * *"* (Italics ours.) 9 C.J. 1103. Under these definitions it seems clear to us a person could have but one business. Only one occupation or employment would so engage a person's time, attention, or labor as to constitute his "principal serious concern or interest," or his "principal" or "chief" concern. The meaning of the word "business" as so defined would, we think, be synonymous with the terms "principal business," "main business," "chief business," etc. Two of the above definitions were taken from decisions of our Supreme Court in Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S.

W. 16, 22 L.R.A. 802, and Waggener v. Haskell, 89 Tex. 435, 35 S.W. 1. These definitions were given in construing the very same constitutional provision now under consideration. These decisions approving such definition would be deemed conclusive of the question at issue but for the fact that they were given in connection with, and apparently as synonymous with, other definitions of the character next to be noticed.

The standard dictionaries, encyclopedias, and decisions give other definitions under which an individual could have two or more businesses. Such is manifestly the sense in which the word is used in the terms "principal business," "main business," "chief business," etc. An example of such definitions is: "that which occupies the time, attention and [or ?] labor of men for the purpose of a livelihood or profit." Or (if considered as complete) the more general definitions "occupation"; "employment."

■ The question for decision may be stated thus: Since the Constitution exempts but one place as a business homestead, and in order for that to be exempt the head of the family must have a calling or business to which the property is adapted and reasonably necessary (Pfeiffer v. McNatt, 74 Tex. 640, 12 S.W. 821), can the head of a family have more than one business, the place to exercise which may be exempt as part of the urban homestead? Although we think this question has never been directly decided by a Texas court, and, if regarded as one purely of first impression, would not be specially difficult, it is nevertheless one upon which it has not been easy for us to reach a satisfactory conclusion. In a number of cases it has been assumed in some, and stated in others, that two or more businesses were involved in determining a particular claim of homestead exemption. In some the question was whether one business was exercised at different places. The latter, of course, may be ruled out of consideration. In some the question of exemption involved different occupations, or employments, exercised at different places. Among the latter see Bowman v. Stark (Tex.Civ.App.) 185 S.W. 921; Wingfield v. Hackney, 30 Tex.Civ.App. 39, 69 S.W. 446; Gibbs v. Hartenstein (Tex.Civ.App.) 81 S.W. 59; Spence v. State National Bank (Tex.Civ.App.) 294 S.W. 618; Campbell v. First Nat. Bank (Tex.Civ.App.) 88 S.

W.(2d) 1084; Parrish v. Frey, 18 Tex.Civ. App. 271, 44 S.W. 322. It does not appear in any of the above cases, except Parrish v. Frey, or in any others so far as we have been able to find, that the use of the word "business" in the sense of "principal business" would have called for any different disposition of the case. In none was the point now considered mentioned. For these reasons it seems to us such decisions are not necessarily to be regarded as authority.

In the case of Parrish v. Frey, supra, although the point was not discussed, nor apparently considered, it is pretty clear that, had it been considered and sustained, the mortgage involved would have been declared void, rather than sustained, as it was, on the ground of estoppel. According to the facts stated, it would appear that the property upon which the mortgage was given, the validity whereof Frey was held to be estopped from disputing, was the place at which he exercised his principal business. The decision seems more consonant with the view that one can have any number of businesses, one place to exercise any one of which may be exempt. The decision is difficult to appraise as authority in the instant case, at least unless it could be known that consideration was given to the very point now under consideration.

If *business* is not to be understood in the sense of principal business, then the Frey Case was clearly and certainly ruled quite properly by the principle of estoppel. The instant case is different. In this case, whatever be the true meaning of "business," the principle of estoppel can under the facts have no application. The undisputed evidence showed that the property in question was Thomas's business homestead, or else, that he had no business homestead, and no other property, the use or occupancy of which could render in the least equivocal the use of the property in question as a business homestead. The undisputed evidence showed that his principal business was the ranching or cattle business, the place of the exercise of which was outside of the town of Strawn.

■ There was no evidence to raise an issue of fact that the upstairs office was the place at which Thomas exercised his cattle or ranching business. If there was any use of it in relation to the ranch or cattle business, it was only as incidental to or in aid thereof, which, as a matter of law, would not constitute that the place

where he exercised that business. Pfeiffer v. McNatt, 74 Tex. 640, 12 S.W. 821; Houston v. Newsome, 82 Tex. 75, 17 S. W. 603; Hinzie v. Moody, 1 Tex.Civ.App. 26, 20 S.W. 769; King v. C. M. Hapgood Shoe Co., 21 Tex.Civ.App. 217, 51 S.W. 532; Evans v. Pace, 21 Tex.Civ.App. 368, 51 S.W. 1094; Spence v. State National Bank (Tex.Civ.App.) 294 S.W. 618; Harrington v. Mayo, 61 Tex.Civ.App. 610, 130 S.W. 650; Bowman v. Stark (Tex.Civ. App.) 185 S.W. 921; Farmers' Nat. Bank v. Carmony (Tex.Civ.App.) 62 S.W.(2d) 1115.

■ The ground of estoppel relied on was representations of Thomas to the effect that the property was not his homestead, and that his principal business was the ranching or cattle business. These representations did not inform defendant that any other property was his business homestead. They amounted to no more than a representation that he had no business homestead, since, as a matter of law, he could have no rural business homestead, his residence homestead being in town. If the property in question was actually his homestead, his use of it was so open and unequivocal that no representations to the contrary could form the basis of an estoppel. 22 Tex.Jur. p. 179, §§ 124, 125, 126.

■ For another and independent reason, there could be no estoppel. Mr. Thomas only executed the deed of trust. He alone made the representations. Mrs. Thomas was not shown to have had any knowledge of same. There could, therefore, be no estoppel as to her, based upon representations. No estoppel could be effective as to either which was not applicable to both. Martin v. Astin (Tex.Com. App.) 295 S.W. 584. Also see Kallman v. Ludenecker, 9 Tex.Civ.App. 182, 28 S. W. 579; Texas Land & Mort. Co. v. Cooper (Tex.Civ.App.) 67 S.W. 173; Durham v. Luce (Tex.Civ.App.) 140 S.W. 850; Parker v. Schrimsher (Tex.Civ.App.) 172 S.W. 165; Barclay v. Dismuke (Tex.Civ. App.) 202 S.W. 364; Miller v. Southland L. I. Co. (Tex.Civ.App.) 68 S.W.(2d) 558.

■ There being nothing to indicate that the question which must control the instant case was even presented or considered by the court in Parrish v. Frey, supra, we have concluded it should not be given controlling effect as authority.

■ Since the word "business" as it appears in the constitutional provision may have been used in the sense of principal,

main, or chief business, in which sense one could have but one business, the place to exercise which would be exempt, or may have been used in a more general sense in which one could have a number of businesses, the place to exercise one of any of which may be exempt, it becomes proper to inquire which of the two meanings, if given to the word, would better effect the purpose of the constitutional exemption. Undoubtedly the purpose of the homestead exemption is to shield from creditors a place for the family to live and a place for the head of the family to exercise his calling or business to enable him to support the family. It was contemplated that a rural homestead would serve both purposes, and, therefore, no separate provision was made for a residence and a business homestead, although it was permitted that the homestead consist of separate and detached parts, if used for the purposes of a home. As to the urban homestead, it was not contemplated that the exemption of a place of residence would be sufficient as the exemption of a place to exercise the calling or business of the head of the family. Hence a separate provision was made for each. Unlike the rural homestead provision, however, the exemption of a place of business cannot extend so as to include separate lots, the use of which is merely in aid of, or incident to, the business exercised at another place. Rock Island Plow Co. v. Alten, 102 Tex. 366, 116 S.W. 1144.

The purpose of the homestead exemption can be more effectively and completely accomplished, we think, by imputing to the makers of the Constitution the intention that the word "business" should be understood in the sense of principal, main, or chief business. Fewer occasions for resort to construction, and fewer grounds for controversy, can arise if the business homestead, if any, must always be a place at which to exercise the principal calling or business of the head of a family. The constitutional prohibition against mortgaging the business homestead will be susceptible of more effective enforcement under that construction. For example, suppose a man with his residence in town of small value, exclusive of improvements, has a valuable store on a lot worth $4,000 in which he employs his time, attention, and labor almost, but not quite, exclusively in a mercantile occupation or employment. He desires to borrow money and secure the loan by a valid lien on his place of business. To accomplish this purpose he may buy a small lot for $100 and at an additional cost of $100 build a stand, and, through an employee, go into the hamburger business. Just as surely as he may have more than one business in the sense of the constitutional provision, he and his wife, by representing to the lender that the hamburger lot is the business homestead, and the mercantile lot is not, they will by such representations, if relied upon, estop themselves thereafter to claim, as against the mortgagee, that the mercantile lot was exempt. If the one place exempted may be the place at which is exercised the comparatively insignificant business of running a hamburger stand, the same as the large and important mercantile business, then the construction which permits the result above stated is imperatively necessary in order to prevent the perpetration of unconscionable fraud. But just the same, in practical effect, and in violation of the spirit of the constitutional provision, a business homestead will have been subjected to a mortgage lien. If, however, as a matter of law, in the case supposed, the mercantile business is the business, the place of the exercise of which is exempt, and, therefore, the hamburger lot is not exempt, then it will work no greater hardship on a money lender to be charged with knowledge of such facts than those he must take knowledge of under the other construction. He can ascertain which is the place where the principal business is carried on just as certainly and safely as he must at his peril under the other construction ascertain the partial truth, at least, of representations to the effect that some place other than the one on which he takes a mortgage possesses, by actual occupancy and use, some of the characteristics of a homestead, in order to found thereon an estoppel. Situations conducive of controversy and questions of estoppel will be greatly minimized.

Under even this view there would no doubt remain a limited field for the operation of estoppel. One might have two occupations or employments carried on at different places in the same town, each of which was so equivocally his principal business as to make his representations, when relied upon, a proper ground of estoppel. Such instances would no doubt be comparatively rare. To the extent of the infrequency of such cases to the same extent would the purpose to exempt the homestead be the more completely effected.

That it was intended that the word "business" be understood as meaning principal business is at least, it seems to us, as reasonable as that it should have the other meaning. When one of two equally reasonable constructions of a constitutional·provision will give rise to fewer or less complicated questions in its application, that construction should be favored. When, in addition, that one of two equally reasonable constructions will more certainly, or to a greater degree, effect the purpose of the provision, such construction should be adopted.

We are inclined to think that, if the word "business" certainly had but one meaning, and that was such as to permit a person to have a number of different businesses, in view of the purpose of the homestead exemption and the purpose to restrict the business homestead to a single place, the construction would be warranted that by "business" was meant "principal business."

However that may be, the conclusion seems to us fully justified that, since the Constitution does not define the word, that definition should be adopted which will permit of more certain application of the constitutional provision to various factual situations and better and more completely accomplish the purpose of the exemption.

The court submitted to the jury the issue of whether the property in question was at the time the deed of trust was executed the business homestead. In connection with the submission of that issue the word "business" was defined as follows: "That which busies or occupies one's time, attention and labor as his *chief concern; .*that which one does for a livelihood; occupation or employment." (Italics ours.) No objection was made to this definition. However, as in effect said before, no.issue of fact was presented. The property in question was not the place at which. Thomas exercised his principal business, but it was just as certainly and indisputedly the place at which he exercised a business which was not his principal business. The property was either exempt or not exempt under the undisputed facts as a matter of law.

It is our conclusion that it was not exempt, and that the judgment of the court below, having so determined, should be affirmed, which is accordingly so ordered.