**SLEEPY HOLLOW DEVELOPMENT CO. et al., Appellants,**

v.

**SOUTH PARK CIVIC CLUB et al., Appellees.**

**No. 16467.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 24, 1975.

Rehearing Denied May 22, 1975.

Second Rehearing Denied July 10, 1975.

Malone, Murphy, Fenley & Lee, W. R. Malone, Huntsville, for appellants.

Wm. E. Hornbuckle, III, Oliver James Moak, Huntsville, for appellees.

PEDEN, Justice.

Appeal from the granting of a temporary injunction in favor of appellees, South Park Civic Club and certain of its members who live in South Park Addition in Huntsville.

The appellants are enjoined from selling lots within the addition of a smaller size than those shown on a recorded plat and from building any improvements on the company's lots without prior approval of the architectural committee set up by the Civic Club. Appellees brought this suit under the Uniform Declaratory Judgments Act, Art. 2524–1, Vernon's Ann.Texas Civil Statutes, to declare the rights, status and legal relations of the parties with respect to the recorded plat and restrictions of the addition, for temporary and permanent injunctive relief and for damages.

Dr. and Mrs. M. D. Hanson were the original subdividers and developers of the addition. Twenty-two sales of lots were made by Dr. Hanson before Sleepy Hollow Development Co. bought the remaining 63 lots in the addition. Sleepy Hollow has since sold five. Appellant company claims the right to replat the remaining lots to a sixty-foot width and the right to approve its own building plans without submission to appellees' architectural committee for approval.

The temporary injunction first enjoins the appellants from selling lots smaller than those shown on the recorded plat of the subdivision.

The dedication of South Park Addition was filed for record by the Hansons on December 7, 1966. It included these provisions:

". . . do hereby adopt said attached plat for subdividing the land owned by us known as South Park Addition . . . and hereby dedicate for the use of the public the streets specified and shown thereon abutting land owned by us for the use of the purchasers and owners of the lots fronting thereon or adjacent thereto and for the use of the public generally . . ."

"We do hereby designate all of the lots shown thereon owned by the undersigned as residential lots for single family dwellings and subject further to the following:

"(1) . . .

"(2) . . . (will be noticed later in this opinion)

"(3) . . .

"(4) No residential structure shall be erected or placed on any building lot, which lot has an area of less than 6,850 square feet or a width of less than sixty (60) feet at the front building set-back line.

" . . ."

The dedication was recorded in Vol. 203 at Page 763 in the Deed Records of Walker County.

No plat appears to have been attached to the dedication instrument, but a map and plat of South Park Addition was recorded in Vol. 195 at Page 669 of the same Deed Records. All of the lots shown on the recorded plat, and not specifically excepted from the dedication by its own terms, are at least 99.5 feet wide. There is evidence that all but two are 100 feet wide and 125 feet deep.

By deed dated September 7, 1972, Dr. and Mrs. Hanson conveyed the 63 unsold lots in South Park Addition to the appellant, describing them as "Being the unsold balance of all lots located in the South Park Addition to the City of Huntsville, Texas, as shown by map and plat of said subdivision recorded in Vol. 195, Page 669 of the Deed Records of Walker County, Texas . ." Here followed a description by lot and block numbers, of the property conveyed.

The deed contained this provision:

"Grantors do further covenant and agree with Grantee that Grantee shall be entitled to replat the subdivision known as South Park Addition in which all of the lands and premises herein conveyed are located . . ."

■ To warrant issuance of a temporary injunction, an applicant is not required to establish that he will prevail on final trial; he needs only to plead a cause of action and to show a probable right on final trial to

the relief he seeks and probable injury in the interim. Sun Oil Co. v. Whitaker, 424 S.W.2d 216 (Tex.1968).

As to probable injury to the applicants, the president and manager of the appellant company testified that it claims the right to replat the subdivision and the right to sell lots as narrow as 60 feet wide.

In their first two points of error the appellants complain that the trial court erred in enjoining the sale of lots less than 100 feet wide because 1) the recorded dedication contemplated such sales and 2) the recorded plat and dedication did not prohibit such sales.

Purchasers of lots in the subdivision testified that before buying their lots they investigated and considered the fact that the recorded plat of the subdivision shows the lots were 100 feet wide. One purchaser stated that he relied on this factor in deciding to buy his lot.

It is difficult to harmonize and give effect to all of the provisions of the dedication so that none will be rendered meaningless, particularly the designation of the 100 foot wide lots shown on the plat as residential lots for single family dwellings, on the one hand, and the restriction against placing any residential structure on any building lot less than 60 feet wide, on the other hand.

The settled rule is that restrictions are construed strictly in favor of the grantee and against the grantor and in favor of the free and unrestricted use of the property. MacDonald v. Painter, 441 S.W.2d 179 (Tex.1969).

Applying that rule and considering the plat and the dedication together, it appears that the intention of the Hansons was to create a subdivision of residential lots each 100 feet wide for single family dwellings but not to restrict the property against the placing of a residential structure on any building lot which was 60 feet or more in width at the front building set-back line (and which had an area of at least 6,850 square feet).

We cannot say, under the facts developed in this case, that a general plan was maintained for development of the addition into lots at least 100 feet wide; we find nothing in the record to show that anyone had bought his lot after recording of the plat but before recording of the dedication.

We sustain the appellants' first two points.

Appellants' third through sixth points are that the trial court erred in enjoining construction without prior approval of the architectural committee of property owners because 3) appellants stood in the shoes of the original developer and thus held the exclusive privilege of approving plans and specifications, 4) the provisions of the recorded dedication pertaining to selection of this committee are void for uncertainty, 5) such committee was selected by owners of a minority of lots in the subdivision and now seeks to act in a manner which constitutes an inequitable and unconstitutional interference with the appellants' property rights and 6) there was no proof of a reasonable basis for deciding that the applicants had a probable right of recovery or that they would suffer probable injury before the case could be tried on the merits.

The dedication contained this restriction:

"(2) So long as the undersigned own a majority of the lots included in these restrictive covenants, they shall have the privilege of approving plans and specifications for improvements to be placed on said restricted lots. After the undersigned have sold a majority of the lots then the then lot owners shall have the privilege of selecting a committee of not less than 3 lot owners to approve the plans and specifications for the improvements to be placed on said restricted lots."

We overrule the appellants' third point. The dedication reserved the privi-

lege of approving plans and specifications to "the undersigned"; the undersigned were Dr. and Mrs. Hanson. No right to convey the privilege in question was retained, and "the undersigned" have now sold a majority of the lots.

■ Appellants' fourth and fifth points present these problems: Is the meaning of the quoted restriction too uncertain to be enforceable? The uncertainty complained about is: Does it mean that after the Hansons had sold a majority of the lots, selection of the committee was to be by a majority of owners of lots or by owners of a majority of lots?

We find no persuasive authority, either way, as to its meaning, but the record does not show which one was adopted in selecting the committee, so we cannot say the trial court erred in upholding its authority. We assume the matter will be more fully developed on final trial. We overrule the appellants' fourth and fifth points of error.

■ We also overrule their sixth, and last, point. The president and manager of the appellant company testified that he has refused to allow the architectural committee to approve or disapprove plans and specifications for improvements in the addition. We hold that this testimony furnished a reasonable basis on which the trial court was entitled to conclude that the appellees would probably be injured pending final trial on the merits unless appellants were temporarily enjoined from violating the restriction in question.

One of the movants testified that, although he is not an expert, the houses built by Sleepy Hollow within the last few days were, to his knowledge and from outward appearances, of the same type and quality as the others in the addition. This testimony did not require the trial court to conclude that the movants would probably not be injured by a refusal of the temporary injunction in view of the refusal by appellants' president and manager to submit plans to the committee.

We reverse and render the trial court's order granting the temporary injunction as to the size of the lots, and we affirm the order as to the architectural committee.

On Motion for Rehearing

■ The appellees argue that the only question before an appellate court in reviewing the granting or refusal of a temporary injunction is the applicant's right to a preservation of the status quo and that the trial court's ruling is not to be disturbed on appeal unless a clear abuse of discretion is shown.

We agree with this statement of the law but consider that we must here apply the modification stated in Southland Life Insurance Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722 (1935): ". . . the trial court abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts."

The motion for rehearing is denied.